1
2
3
4
5
6
7
8          UNITED STATES DISTRICT COURT
           WESTERN DISTRICT OF WASHINGTON
9                      AT TACOMA

10   KELLY and SALLY SAMSON, husband and        Case No. 05-5197 RJB
     wife, on behalf of themselves and all others
11   similarly situated,                        [Consolidated Case Nos. 05-
                                                5197, 05-5198, 05-5199, 05-
12                         Plaintiffs,          5201, 05-5202, 05-5203, 05-
                                                5204, 05-5205, and 05-5206]
13
            v.
14                                              ORDER ON MOTIONS FOR
     CITY OF BAINBRIDGE ISLAND,                 PARTIAL SUMMARY
15                                              JUDGMENT
                           Defendant.
16

17          This matter comes before the Court on Plaintiffs' Motion for Partial Summary Judgment

18   (Dkt. 87) and Defendant's Motion for Partial Summary Judgment (Dkt. 100).  The Court is

19   familiar with the records and files herein and all documents filed in support of and in opposition

20   to the motions, and heard oral argument on January 21, 2010. The Court is fully advised.
21
                    I.  FACTUAL AND PROCEDURAL BACKGROUND
22

23          The City of Bainbridge Island adopted "rolling" ordinances that provided "moratoria"

24   that prevented Plaintiffs and others from filing complete development permit applications for

25   certain shoreline developments.  These moratoria were in place from August 20, 2001, to March

26   1, 2004.  The shorelines affected by the moratoria were part of, or all of, the shorelines of the

27   City of Bainbridge Island.  Furthermore, details of those moratoria need not be set forth here

28

beyond the following outline; the record is replete with descriptions of the actions of the City.

On August 8, 2001, the City Council of the City of Bainbridge adopted Ordinance No. 2001-32, which imposed a moratorium on the filing of shoreline development applications for the construction of new docks and piers in Blakely Harbor. Dkt. 87, p. 3; Dkt. 100, p. 2. The ordinance was passed on an emergency basis and without a public hearing. Dkt. 87, p. 3. A public hearing was held after adoption.

On August 22, 2001, the City Council adopted Ordinance No. 2001-34, which repealed Ordinance No. 2001-32 and imposed a one-year moratorium on filing new applications for shoreline substantial development permits, shoreline substantial development exemptions, and shoreline conditional use permits throughout Bainbridge Island. Dkt. 87, p. 3; Dkt. 100, p. 3. This ordinance was also passed on an emergency basis without notice or a public hearing. Dkt. 87, p. 3. A public hearing was held after adoption.

On October 10, 2001, the City Council adopted Ordinance No. 2001-45, which amended the moratorium in Ordinance No. 2001-34 to apply only to new overwater structures (piers, docks and floats) and new shoreline armoring (bulkheads and revetments) where none previously existed. Dkt. 87, p. 3; Dkt. 100, p. 3. The City Council also adopted findings of fact to support the City-wide moratorium. *Id*. Plaintiffs allege that Ordinance No. 2001-45 did not amend the one-year moratorium term, but instead simply amended the scope of the moratorium. *Id*. Plaintiffs also allege that the findings of fact adopted by the City Council essentially stated that piers, docks and bulkheads could potentially have significant impact on shoreline habitat, and that the moratorium was focused on structures that have the greatest potential to impact shoreline habitat. Dkt. 87, p. 3-4. The ordinance stated that the moratorium was "necessary for the protection of the public health, safety, property, or peace, including the protection of shoreline habitat that supports a species threatened with extinction while the City updated its Shoreline

Master Program ("SMP"). Dkt. 87, p. 4. Plaintiffs state that state law does not require the City to update its SMP until December 1, 2011. *Id*. Defendant counters that the update to the SMP was due much earlier, about 2003, but in 2003 the state law changed the deadline to update the SMP to 2011. Dkt. 109., p. 3., Dkt. 100, p. 2.

On November 8, 2001, a lawsuit was filed against the City of Bainbridge in Kitsap County Superior Court, seeking a declaration that Ordinance No. 2001-45 was illegal and void ("*Biggers* Litigation"). Dkt. 87, p. 4; *see Biggers v. City of Bainbridge*, 162 Wn.2d 683, 169 P.3d 14 (2007). While the *Biggers* Litigation was pending, the City reviewed an environmental assessment and prepared a draft updated SMP. Dkt. 87, p. 4., Dkt. 100, p. 2.

On August 14, 2002, after a public hearing, the City Council adopted Ordinance No. 2002-29, which extended the term of the moratorium to March 1, 2003. Dkt. 87, p. 4; Dkt. 100, p. 3. The ordinance stated that the City would not complete the revisions to its SMP until early 2003. Dkt. 87, p. 4. On February 26, 2003, the City Council adopted Ordinance 2003-13, which was effective immediately as an emergency ordinance, extending the moratorium for a second time to September 1, 2003. Dkt. 87, p. 4; Dkt. 100, p. 3.

On June 16, 2003, the Kitsap County Superior Court issued a written memorandum decision in the *Biggers* Litigation, and entered an Order thereon on August 6, 2003, invalidating the moratoria in Ordinance Nos. 2001-34 and 2001-45. Dkt. 87, p. 4; Dkt. 104-3, p 2. On August 8, 2003, the City filed an appeal in Division II of the Washington Court of Appeals. *Id*. On August 11, 2003, the City filed a notice of stay to keep the moratorium in effect. *Id*. The stay operated automatically from August 11, 2003, pursuant to Washington Rules of Appellate Procedure 8.1(b). The City, by press release on August 13, 2003, stated that it would not be accepting applications for private docks and piers in Blakely Harbor. Dkt. 87, p. 5., Dkt. 100, p. 3. No applications for shoreline developments were made to the City between August 6 and

August 11, 2003.

On August 27, 2003, the City Council adopted Ordinance No. 2003-34, which extended the moratorium, but only for Blakely Harbor, until March 1, 2004. Dkt. 87, p. 5-6, Dkt. 100, p. 4. On September 10, 2003, the City Council passed Ordinance No. 2003-30, which amended the City's SMP to establish dock restrictions in Blakely Harbor. *Id*. Shortly thereafter, the City sent the amendments of its SMP to the Washington Department of Ecology for its review and approval. *Id*. On or around February 6, 2004, the Washington Department of Ecology issued its Findings of Fact and Conclusions of Law approving the City's dock ordinance, Ordinance No. 2003-30. *Id*. Ordinance 2003-30 is generally consistent with the moratoria ordinances.

On or about February 16, 2005, Plaintiffs initiated separate actions in the Superior Court of Washington State in Kitsap County against the City of Bainbridge Island, Washington, alleging violations of the Revised Code of Washington ("RCW") Chapter 64.40, Inverse Condemnation, and violations of their federal civil rights. Dkt. 1-2, p. 23-24; Dkt. 87, p. 11. On March 17, 2005, Defendant City of Bainbridge Island ("the City") removed the case to this court and the cases were consolidated. Dkt. 1; Dkt. 87, p. 11. On October 29, 2009, Plaintiffs filed the motion for partial summary judgment now under consideration. Dkt. 87. On November 25, 2009, the City filed the motion for partial summary judgment now also under consideration. Dkt. 100. On November 18, 2009, the Court entered a minute order renoting Plaintiffs' motion so that it could be considered with the City's motion. Dkt. 99.

Plaintiffs allege that during the relevant time period, that is from August 20, 2001 to March 1, 2004, all Plaintiffs intended to file permit applications to construct new docks or other improvements in Blakely Harbor that would benefit properties they owned or properties in which they had a beneficial interest. Dkt. 87, p. 7.; Dkts. 89-96; Dkts. 79-86. They allege that the City wrongly refused to accept applications and informed Plaintiffs that the applications would be

refused because of the moratorium, thereby giving rise to Plaintiffs' two claims - inverse condemnation and federal civil rights violations. *Id.*

## II. DISCUSSION

### A. Property Rights - Fundamental Rights

This case arises under Washington State's vested rights doctrine, which provides that a property owner has a right to have any land use development application processed under the regulation in effect at the time a complete development permit application is filed, regardless of subsequent changes in zoning or other land use regulations. *See, e.g. Thurston County Rental Owners Ass'n v. Thurston County*, 85 Wn. App. 171, 182 (1997)(citing *Erickson v. McClerran*, 123 Wn.2d 864 (1994)). The doctrine is, arguably, of state and federal constitutional dimension because the right to use and develop land is a protected property right. *See Vashon Island Comm. for Self-Government v. Boundary Review Board*, 127 Wn.2d 759, 768 (1995)("The vested rights doctrine is based on constitutional principles of fundamental fairness, reflecting an acknowledgment that development rights are valuable and protectable property rights."); *see generally Euclid v. Ambler Realty Co.*, 272 U.S. 365, 395 (1926). The doctrine is based on "*ex post facto*" considerations and principles of fairness and due process. It is designed to prevent the rules from changing after the game begins.

It is unclear as to what applications were attempted to be filed, or what would have happened to those applications had they been processed at the time of filing. These issues leave unclear the matter of exactly what vested rights the various Plaintiffs may be entitled to urge in this case. It is clear that no applications were filed between August 6 and 11, 2003. For the purposes of this order only, the court will assume that all Plaintiffs would have attempted to file applications but for the moratoria and the *Biggers* litigation, between August 8, 2001, and August 6, 2003, and between August 11, 2003 and February 6, 2004.

Property interests are not created by the Constitution, "they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." *Cleveland Bd. Of Educ. v. Loudermill*, 470 U.S. 532, 538 (1985) (quoting *Board of Regents v. Roth*, 408 U.S. 564 577 (1972)). While the existence of a protected property interest may be decided by reference to state law, the determination of whether due process was accorded is decided by reference to the United States Constitution. *See Cleveland Bd. of Educ.*, 470 U.S. at 541.

What are the "property rights" at issue here? Plaintiffs argue the right to use and enjoy - to develop - land for any legitimate purpose (Dkt 87, p. 14-15), but Plaintiffs never had a right to *develop* their waterfront property and tidelands - the only "right" at issue here is any right they may have to *apply* for development, with a right to proceed, after application, under the rules in place at the time of the application. These "rights" have been recognized by courts, *Erickson & Associates v. McLerran*, 123 Wn.2d 864, 867-68 (1994); *West Main Associates v. City of Bellevue*, 106 Wn.2d 47, 50-51, 53 (1986)("A vested right does not guarantee a developer the ability to build."). However, the United States Supreme Court has never explicitly found that property rights in this context are fundamental rights. Instead, the Supreme Court has consistently applied a lower standard to land-use issues, that is, whether the governing body's conduct was clearly arbitrary and unreasonable and without substantial relation to governmental interests. *See generally*, *Cuyahoga Falls v. Buckeye Community Hope Foundation*, 538 U.S. 188, 198 (2003); *Euclid v. Ambler Realty Co.*, 272 U.S 365, 395 (1926). To establish a fundamental right, the right must be found "deeply rooted in this Nation's history and tradition." *Bowers v. Hardwick*, 478 U.S. 186, 192 (1986) (citing *Moore v. East Cleveland*, 431 U.S. 494, 503 (1977))(*overruled on other grounds by Lawrence v. Texas*, 539 U.S. 558 (2003)). "History and tradition are the starting point but not in all cases the ending point of the substantive due

process inquiry." *Lawrence v. Texas*, 539 U.S. 558, 572 (2003). The rights that are found to be fundamental rights are within the Bill of Rights and six categories which the Supreme Court has specifically found: freedom of association; right to vote; interstate travel; fairness in criminal process; deprivation of life, liberty, and property; and right to privacy. *See* Ronald D. Rotunda & John E. Nowak, TREATISE ON CONSTITUTION LAW, SUBSTANCE AND PROCEDURE §§15.6, 15.7 (Thomson West 4th ed. 2007). However, the Supreme Court has always been reluctant to expand the concept of substantive due process. *Halverson*, 42 F.2d at 1262 (quoting *Collins v. City of Harker Heights*, 502 U.S. 115, 125 (1992)).

Plaintiffs have alleged that they have a fundamental right to submit an application for a dock permit and argue that they have a vested property right once an application is submitted. However, the Supreme Court has consistently applied the reasonable and legitimate state interest test to land-use decisions and has not treated land-use issues as involving fundamental rights. In *Dolan v. City of Tigard*, 512 U.S. 374 (1994), the Supreme Court applied the reasonable and legitimate state interest test to the owner of a city lot whose application for a building permit was denied. In *Euclid v. Ambler Realty Co.*, 272 U.S. 365, 395 (1926), the Supreme Court stated that before an zoning ordinance can be declared unconstitutional, the provision must be clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare. Hence, the lower rational relationship test applies: a government regulation must be rationally related to a legitimate governmental interest.

In this case, even assuming that the case relates to property and that the vested rights doctrine applies, we are not dealing with a "fundamental right" in the Constitutional sense.

**B. Claims at Issue**

The motions presented by the parties address only Plaintiffs' claims under the Federal Civil Rights Act, 42 U.S.C. § 1983. Plaintiffs claim that the City's actions violated Plaintiffs'

equal protection rights, substantive due process rights, and procedural due process rights. Dkts. 79-87.  They claim that these violations prevented them from reasonably developing and using their real property and that the rolling moratoria were otherwise arbitrary and capricious and/or unlawful.  Dkt. 79-87.

**C.  Summary Judgment Standard**

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(c).  The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985).  There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the non moving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)(nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt.").  *See also* Fed.R.Civ.P. 56(e).  Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth.  *Anderson v. Liberty Lobby, Inc.*, 477 .S. 242, 253 (1986); *T.W. Elec. Service Inc. v. Pacific Electrical Contractors Association*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question.  The court must consider the substantive evidentiary burden that the nonmoving party must meet at trial – e.g., a preponderance of the evidence in most civil cases.  *Anderson*, 477 U.S. at 254, *T.W. Elect. Service Inc.*, 809 F.2d at 630.  The court must resolve any factual issues in favor of the nonmoving party only when the facts specifically attested by that party contradict facts

specifically attested by the moving party. The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elect. Service Inc.*, 809 F.2d at 630 (relying on *Anderson, supra)*. Conclusory, non specific statements in affidavits are not sufficient, and "missing facts" will not be "presumed." *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888-89 (1990).

**D. Analysis of the *Biggers* Case**

The Plaintiffs urge that the *Biggers* case, Kitsap County Superior Court No. 01-2-03282-0, 124 Wn. App. 858 (2004) and 162 Wn.2d 683 (2007), provides a basis for their § 1983 claim under principles of collateral estoppel or issue preclusion.

*Biggers* appears to have changed its spots as it wound through the state court system. First, in the Superior Court, Judge Leonard Costello, in a Memorandum Decision on Motions for Summary Judgment, dated June 16, 2003, on purely legal grounds, decided the question of "whether or not the City has the authority under state law to impose a moratorium which prevents citizens from applying for and constructing protective bulkheads and over-water structures on the shorelines of the city." Dkt. 88-2, p. 11. His decision favored Plaintiffs with these words: "Reading the statute as a whole, and the accompanying case law, it appears as though the statute does preempt such local legislation, and that the city overstepped its constitutional limits in passing the moratorium ordinance. . . . The moratorium in effect allows the city to prohibit precisely what the statute unconditionally allows, and in so doing violates the state constitution." Dkt. 88-2, at 17. Judge Costello did not address the reasonableness of the moratoria in his opinion.

The Washington State Court of Appeals affirmed Judge Costello's ruling, holding that the City had no statutory authority to impose moratoria on shoreline development, using these words: "In other words, the SMA (Shorelines Management Act) trumps the GMA (Growth

Management Act) in this area and the SMA does not provide for moratoria on shoreline use or development." *Biggers v. City of Bainbridge Island*, 124 Wn. App. 858, 867 (2004). The Court of Appeals did not address the reasonableness of the moratoria in its opinion.

The *Biggers* case then reached the Supreme Court of the State of Washington. It is appropriate to note that the Washington Supreme Court's standard of review of an order on summary judgment is *de novo*, taking all facts and inferences in the light most favorable to the non-moving party. *Boag v. Farmers Ins. Co. of Wash.*, 117 Wn. App. 116, 121 (2003). Under that authority, some justices went beyond the Superior Court and Court of Appeals opinions, apparently basing their views on the record in the lower courts.

The Washington Supreme Court proceedings spawned three separate opinions: A "lead" opinion signed by four Justices, a concurring opinion signed by one Justice, and a dissent signed by four Justices. The lead opinion acknowledged that the City's petition to the Supreme Court was "to determine whether the Court of Appeals erred in ruling that the City lacks inherent constitutional and/or statutory authority to adopt moratoria." *Biggers v. City of Bainbridge*, 162 Wn.2d 683, 691 (2007). The lead opinion concluded "that no local government may impose regulations that are in conflict with the state's general laws. Here, the City's imposition of repeated moratoria was unconstitutional and unlawful." *Id*. at 702.

All three *Biggers* opinions were based on state law, and the lead opinion made no finding on the reasonableness of the rolling moratoria ordinances. Justice Fairhurst, in the dissent, stated that the "lead opinion erroneously concludes that the moratorium was not reasonable because it did not allow for the construction of protective bulkheads and private docks, which are exempt from the permitting requirements under the SMA." *Biggers*, 162 Wn.2d at 711. Although, arguably, there was some discussion of reasonableness in the lead opinion, there was no finding there, one way or the other, as to whether the moratoria, or any part of them, were reasonable.

The lead opinion's conclusion appears to be based entirely upon legal issues regarding the authority to enact moratoria. "The City's imposition of repeated moratoria was unconstitutional and unlawful." *Biggers*, 162 Wn.2d at 702. The *Weden* (see below) test was not mentioned in the lead opinion.

Justice Chambers, in his concurrence, sharply disagreed with the lead opinion on the issue of the authority of the City to issue moratoria. He agreed with the dissent on that issue in these words: "While I disagree with the lead opinion's conclusion that the City lacks authority to impose *any* shoreline moratoria, I do agree that this moratorium exceeded its lawful power. A *reasonable* moratorium may be a valid exercise of a municipality's power, as such an exercise of power may give the city time to create a comprehensive plan." *Biggers*, 162 Wn.2d at 703. Justice Chambers focused on standards for a city's use of the police power, and indicated that that power would be upheld if (1) the matter is local, (2) the use is not in conflict with the general laws, and (3) the use is reasonable. *Biggers*, 162 Wn.2d at 705 (citing *Weden v. San Juan County*, 135 Wn.2d 678, 692 (1998)). He concluded that the moratoria in question were local and the use was not in conflict with the general laws, but found that these particular moratoria were unreasonable, and on that narrow ground, concurred with the *result* - that is, affirmance - reached by the lead opinion. He did not agree with the rationale of the lead opinion. He concluded, "Because I find the City's use of its police power was unreasonable, I would affirm the Court of Appeals." *Biggers*, 162 Wn.2d at 706. Justice Chambers, in finding the subject moratoria unreasonable, made this statement: "In conclusion, in my view, it is arrogant, high handed, and beyond the pale of any constitutional authority for stagnant government to deny its citizens the enjoyment of their land by refusing to accept building permits year after year based on a 'rolling' moratorium. Excessive rolling moratoria frustrate the efficient regulation of land and violate individual rights." *Id.*

The four-Justice dissent found that the City did not misuse its broad police powers, and acted properly and constitutionally in adopting the moratoria. The dissent's conclusion on the City's authority was as follows: "Because the city has authority to administer the permit program, it also has authority to defer acceptance of permit applications as it deems necessary to ensure compliance with the SMA. I would, therefore, conclude that the city acted within its authority under *article XVII, section I* when it adopted its moratorium because the SMA delegates authority to local government to administer the permit program regarding the use of shorelines within the local government's jurisdiction." *Biggers*, 162 Wn.2d at 714. The dissent also addressed the reasonableness of the subject ordinances, applying a two-part test to determine if an ordinance is a reasonable exercise of police powers: "First, it must 'promote the health, safety, peace, education or welfare of the people.' *Weden*, 135 Wn.2d at 700. Second, the requirements of the ordinance must have a reasonable relationship to its underlying purpose. *Id*." *Biggers*, 162 Wn.2d at 711. The dissent concluded that the City acted reasonably in adopting its moratoria "because it promoted the health and welfare of the public related to the City's interest in protecting the shorelines from over development while it amended its SMP and comprehensive plan." *Biggers*, 162 Wn.2d at 712.

*Kailen v. Clallam County*, 152 Wn. App. 974 (2009), gives us some guidance in regard to interpreting plurality opinions, such as *Biggers*:

> "A plurality opinion has limited precedential value and is not binding on the courts." This court has observed that it is not possible to assess the correct holding of an opinion signed by four justices "with the fifth vote, concurring in the result only, being unaccompanied by an opinion." "Where there is no majority agreement as to the ***rationale*** for a decision, the holding of the court is the position taken by those concurring on the narrowest grounds.

*Kailin*, 152 Wn. App. at 985-86 (internal citations omitted).

Although Justice Chambers provided a rationale for his decision, unlike Justice Madsen

in *Kailin*, the lesson of *Kailin* holds true - the holding of the *Biggers* court - on the narrowest agreed grounds of the five concurring Justices - is that the moratoria were unlawful - not unconstitutional under state law, but unlawful.

Issue preclusion, under federal law, applies when in a different case, (1) identical issues are decided; (2) a final judgment on the merits is reached; (3) the party against whom the plea is asserted is a party to or in privity with a party to, the prior adjudication; and (4) application of the doctrine must not work an injustice on the party against whom the doctrine is to be applied. *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 330 (1979); *Kourtis v. Cameron*, 419 F.3d 989, 994 (2005)(citing *Hydranautics v. FilmTec Corp*., 204 F.3d 880, 885 (2000)), *overruled on other grounds by Taylor v. Sturgell*, 128 S.Ct. 2161 (2008); *see also Hadley v. Maxwell*, 144 Wn.2d 306 (2001). Here, the issue preclusion argument fails as to elements (1) and (4). The issues are different - *Biggers* decided that the moratoria were invalid as unlawful. *Biggers* did not decide whether plaintiffs' federal constitutional rights were violated for § 1983 purposes. Even if issue preclusion does bind this court to the conclusion that the moratoria were invalid, it does not direct the court to any other findings or conclusions. To assume that the invalidity of the moratoria equals a federal constitutional violation would work an injustice on defendant. That issue was not litigated or decided in *Biggers*.

So where does *Biggers* leave us in this case? Five Justices found that the City has the authority to issue moratoria; four Justices found that the City does not have such authority. Four Justices found that the moratoria in this case were reasonable; one Justice found that the subject moratoria were not reasonable under *Weden*. Four Justices did not address reasonableness. This court can and does conclude, from *Biggers*, that the moratoria were *not* void *ab initio* for lack of legal authority, but were voidable as unlawful. *Biggers* left undecided the question of whether the ordinances were reasonable under the *Weden* test. The reasonableness question raises some

sub-issues; for example, was the moratoria in part reasonable but not for the entire period here involved?  It appears that reasonableness questions under the *Weden* test need not be answered in this federal court in order to resolve the issues raised by the federal § 1983 claims of Plaintiffs.  This court does conclude that the moratoria were unlawful, based on *Biggers*.

It is interesting to note that the *Biggers* decision provided no direct benefit to Plaintiffs in that case.  The court only declared the moratoria invalid, and granted fees.

**E.  42 U.S.C. § 1983 Legal Standard**

Under 42 U.S.C. § 1983, liability attaches to one who deprives another, under color of law, of any rights, privileges or immunities secured by the Constitution or laws of the United States.  There is no issue here about the City acting under color of law.  Plaintiffs must prove the particular rights under the Constitution and laws of the United States of which they were deprived, and they must prove that the acts of deprivation of Plaintiffs' rights were so closely related as to be the moving force that caused the ultimate injury.  *See* NINTH CIRCUIT MANUAL OF MODEL JURY INSTRUCTIONS - CIVIL, and *Oviatt v. Pearce*, 954 F.2d 1470 (1992).

Plaintiffs urge that a violation of state law and the Washington State Constitution constitutes a violation of § 1983.  Their claim, however, is under the Federal Civil Rights Act, 42 U.S.C. § 1983, and that claim is based on the alleged deprivation of Plaintiffs' rights guaranteed by the Constitution of the United States.  *See* Amended Complaints, Dkts. 79-86, VI Second Cause of Action: Federal Civil Rights Act, Paragraphs 6.1-6.4, pages 23-30.  Accordingly this court must apply federal § 1983 standards to the facts shown.  This is consistent with *Memphis Light, Gas and Water Division v. Craft*, 436 U.S. 1, 10 (1978) ("Although the underlying substantive interest is created by 'an independent source such as state law,' federal constitutional law determines whether that interest rises to the level of a 'legitimate claim of entitlement' protected by the Due Process Clause.")(*quoting Board of Regents v. Roth*, 408 U.S. 564, 577

(1972)); *Newman v. Sathyavaglswaran*, 287 F.3d 786, 790 (2002) (In a case involving a deprivation of property claim under § 1983, the court stated, "The property interests 'are not created by the Constitution, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law.'")(*quoting Board of Regents v. Roth*, 408, U.S. 564, 571-72 (1972)); *Lawson v. Umatilla County*, 139 F.3d 690, 692 (1998)(In a case involving a § 1983 claim, the court stated "State law, or some other independent source, establishes the parameters of an individual's substantive interest, but federal law determines whether that interest is a property right protected by the Due Process Clause of the Fourteenth Amendment.")(internal citations omitted). *See also Ulrich v. City and County of San Francisco*, 308 F.3d 968, 976 n. 9 (2002).

It is interesting to note that if this suit had been brought against individual city officers, they might well be entitled to qualified immunity, but municipalities do not enjoy qualified immunity from suit under § 1983. *Pearson v. Callahan*, 129 S.Ct. 808, 815 (2009); *Owens v. City of Independence*, 445 U.S. 622, 638 (1980); *Ferguson v. City of Phoenix*, 157 F.3d 668, 679-80 (1998).

The particular deprivation of rights that Plaintiffs allege, and that are at issue in these motions, are United States Constitutional rights to equal protection, procedural due process, and substantive due process. U.S. CONST. amend. XIV, § 1.

**F.  Some Preliminary Conclusions**

It does appear clear that the moratoria were issued for a governmental purpose, although there is a substantial disagreement as to the wisdom of the City's actions.  It also appears clear that the City had the authority under existing law to issue moratoria (see discussion of *Biggers* case, above).  Like any ordinance, however, in order to be valid, it must be not only for legitimate governmental purposes, but must also be reasonable.  *Romer v. Evans*, 517 U.S. 620,

635 (1996)("A law must bear a rational relationship to a legitimate governmental purpose.").  It

also appears clear that the City had the right to respond to litigation in the *Biggers* case as it did,

including the right to request stays that were in place from and after August 11, 2003.  The

moratoria were determined to be invalid as unlawful in the *Biggers* litigation.  The decision of

invalidity in *Biggers*, however, does not automatically, or necessarily, equate to a federal civil

rights violation.

**G.  Equal Protection**

The Equal Protection Clause, United States Constitution, Amend. XIV, prohibits a state

from denying to any person within its jurisdiction the equal protection of the laws, which is

essentially a direction that all persons similarly situated should be treated alike.  *City of Cleburne

v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985); *Jones Intercable v. City of Chula Vista*,

80 F.3d 320 327 (9th Cir. 1996).  The court should apply a strict scrutiny analysis only if an

allegedly discriminatory classification disadvantages a suspect class or burdens the exercise of a

fundamental right.  *City of Cleburne*, 473 U.S. at 440.  When a suspect class is not implicated,

the court must determine whether the alleged discrimination is patently arbitrary and bears no

rational relationship to a legitimate governmental interest.  *Vermouth v. Corrothers*, 827 F.2d

599, 602 (9th Cir. 1987)(quoting *Young v. United States Parole Comm'n*, 682 F.2d 1105,1109

(5th Cir.), *cert. denied*, 459 U.S. 1021 (1982)).  To make out a claim for a violation of equal

protection, Plaintiffs must show that the City "intentionally and without rational basis, treated

the Plaintiff differently from others similarly situated."  *North Pacifica LLC v. City of Pacifica*,

526 F.3d 478 (9th Cir. 2008).

The City argues in its motion for partial summary judgment that Plaintiffs cannot show

that they are members of a protected class or that the government acted irrationally.  Dkt. 100, p.

23.  Plaintiffs respond by stating that they can prevail on an equal protection claim if they show

that the alleged rational basis for its acts was a pretext for an impermissible motive. Dkt. 111, p. 22. Plaintiffs allege that the City did not pass the moratoria for the purpose of updating the Shoreline Master Program, but instead the reason for the moratoria was that the City folded under the pressures of "a powerful neighborhood association." *Id*.

First, the correct standard to analyze an equal protection claim in this case is that Plaintiffs must prove that the City intentionally and without rational basis, treated Plaintiffs differently from others similarly situated. *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)("The purpose of the equal protection clause of the Fourteenth Amendment is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination." (internal citations omitted)); *North Pacifica LLC*, 526 F.3d at 486 ("In order to claim a violation of equal protection... the plaintiff must establish that the City intentionally, and without rational basis, treated the plaintiff differently from others similarly situated."). As noted by the City, the moratoria affected all of Bainbridge Island and/or the Blakely Harbor shoreline owners equally. Plaintiffs have not shown that they were selectively singled out from the other shoreline owners or were treated any differently from other shoreline owners in the City of Bainbridge Island and/or Blakely Harbor. Even assuming that Blakely Harbor shoreline owners were treated differently from those who were not within Blakely Harbor, Plaintiffs have not shown that the actions of the City in that regard were not rational.

Second, Plaintiffs argue that pretext for an impermissible motive overcomes any City action that has a rational basis. However, the cases cited by Plaintiffs, *Engquist v. Oregon*, 478 F.3d 985 (2006), and *Squaw Valley Dev. Co. V. Goldberg*, 375 F.3d 936 (2004), only refer to an executive action where there was selective enforcement of the law, which is distinguishable from this case where a legislative body passed an ordinance that applied to all.

Even granting Plaintiffs all reasonable inferences, their argument fails. Plaintiffs assert

that the real reason for the passing of the moratoria was that a neighborhood association lobbied or "pressured" the City to institute a moratorium. Plaintiffs have not cited case law and the Court has not found case law that supports the proposition that lobbying by a neighborhood association can not provide a rational basis for passing an ordinance. Apparently, Plaintiffs lost, or did not enter, the lobbying contest. In regard to the *Biggers* case, as discussed above, there was no finding that the City's actions were or were not reasonable. The City's actions had a rational basis, even if there was substantial objection, and even though the City's actions were later determined to be unlawful.

For the foregoing reasons, there are no genuine issues of material fact, and the City's motion for partial summary judgment regarding Plaintiffs' equal protection claim should be granted.

**H. Procedural Due Process**

Plaintiffs' obligations under their procedural due process claim have been stated somewhat differently over the years. For example, in *Bateson v. Geisse*, 857 F.2d 1300 (9th Cir. 1988), the court said, "To state a procedural due process claim, Bateson must establish that he had a protectable property interest in his proposed minor plat application, and, if so, that he was denied this property right without the process which was due under the circumstances."

In *Halverson v. Skagit County*, 42 F.3d 1257 (9th Cir. 1994), the court points out that procedural due process claims do not "deal with the substance of the challenged decisions, but with the process by which they were reached," and further points out that due process of law requires notice and opportunity to be heard before a deprivation, but provided that "when the action complained of is legislative in nature, due process is satisfied when the legislative body performs its responsibilities in the normal manner prescribed by law." *Halverson* further pointed out that in determining whether a governmental action is legislative or administrative, the court

should focus on the "character of the action rather than its label." It appears clear that the governmental action at issue in the case at bar was legislative in nature.

In *Gallo v. United States District Court for the District of Arizona*, 349 F.3d 1169 (9th Cir. 2003), the court elaborated on legislative due process as follows: "Whether an affected party is entitled to individual notice and a pre-deprivation hearing depends upon the character of the action. When the action is purely legislative, the statute satisfies due process if the enacting body provides public notice and open hearings." *Gallo*, 349 F.3d at 1181. In *Halverson*, the court stated that "governmental decisions which affect large areas and are not directed at one or a few individuals do not give rise to the constitutional procedural due process requirements of individual notice and hearing; general notice as provided by law is sufficient. *Halverson*, 42 F.3d at 1261.

Plaintiffs allege that they were denied procedural due process and that they were "permanently" deprived of the development rights they had prior to and during the unlawful moratoria. Dkt. 111, p. 19-21. However, Plaintiffs do not argue that they were never given any notice of the moratoria, or that the City did not follow the law or procedure that governed legislative actions. On the contrary, while Ordinance Nos. 2001-32, 2001-34, and 2003-13 were alleged to have been passed on an emergency basis without notice or public hearing, Ordinance Nos. 2001-45, 2002-29, and 2003-30 were held with notice and with a public hearing. Even if the emergency ordinances were passed without notice or hearing, the procedure was proper under the law and procedure that governed such legislative actions, and hearings were held after the fact, with the opportunity to void earlier action. In regard to the *Biggers* case, the opinions did not address the process by which the moratoria was passed. Based on what the parties have presented in their motions it appears that the City's process in adopting the ordinances does not raise federal Constitutional issues.

For the foregoing reasons, there are no genuine issues of material fact and the City should be granted summary judgment regarding Plaintiffs' procedural due process claims.

**I. Substantive Due Process.**

Discussion of Plaintiffs' substantive due process claims begins with *Bateson v. Geise*, 857 F.2d 1300 (9th Cir. 1988), where the court concluded that " a substantive due process claim does not require proof that all use of the property has been denied, but rather that the interference with property rights was irrational or arbitrary." *Bateson,* 857 F.2d at 1303 (other citations omitted). *Bateson* also pointed out that plaintiffs could recover under § 1983 only if "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation or decision officially adopted or promulgated by [the local governing body's'] officers and causes the constitutional violation." *Bateson*, 857 F.2d at 1303 (internal citations omitted).

In a 1994 decision in *Kawaoka v. City of Arroyo Grande*, 17 F.3d 1227 (9th Cir. 1994), the Ninth Circuit discussed the burden of proof on a substantive due process claim brought under circumstances similar to the case at bar as follows:

> To establish a violation of substantive due process, the Kawaokas are required to prove that the City's general plan or temporary water moratorium was "clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals or general welfare." Legislative acts that do not impinge on fundamental rights or employ suspect classifications are presumed valid, and this presumption is overcome only by a "clear showing of arbitrariness and irrationality."

> In a substantive due process challenge, we do not require that the City's legislative acts actually advance its stated purposes, but instead look to whether "the governmental body *could* have had no legitimate reason for its decision." The City's general plan does not violate substantive due process as long as it advances any legitimate public purpose, and if it is "at least fairly debatable" that the decision to adopt the general plan and the water moratorium was rationally related to legitimate governmental interests, the City's actions must be upheld.

*Kawaoka*, 17 F.3d at 1234 (citations omitted).

The same year, 1994, in *Halverson v. Skagit County*, 42 F.3d 1257 (9th Cir. 1994), the

court pointed out that "the protection from governmental action provided by substantive due process has most often been reserved for the vindication of fundamental rights," *Halverson*, 42 F.3d at 1261. The court in *Halverson* went on to say that, "In a substantive due process case such as this, our concern is with the rationality of a government action, regardless of its impact." *Halverson*, 42 F.3d at 1262 (citation omitted). In choosing to base their claim for compensation on an alleged violation of substantive due process, Plaintiffs shoulder a heavy burden. *Id*. "In order to survive the county's summary judgment motion, Plaintiffs must demonstrate the irrational nature of the county's actions by showing that the county '*could* have had no legitimate reason for its decision.'" *Id*. (citation omitted). "If it is 'at least fairly debatable' that the county's conduct is rationally related to a legitimate government interest, there has been no violation of substantive due process." *Id*. (citation omitted). "To establish a violation of substantive due process, Plaintiffs must prove that the government's action was clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals or general welfare." *Id*. (citation omitted).

In *Gallo v. United States District Court for the District of Arizona*, 349 F.3d 1169 (9th Cir. 2003), the Ninth Circuit stated as follows: "Applying the well-established constitutional analysis, [a government] scheme not affecting fundamental rights will pass scrutiny if the scheme bears 'a rational relationship to a legitimate state interest.'" *Gallo*, 349 F.3d at 1179 (internal citation omitted).

In a consistent holding, in *Matsuda v. City and County of Honolulu*, 512 F.3d 1148 (9th Cir. 2008), the Ninth Circuit used even stronger language in describing the rational relationship test, as follows: "The burden this places on the plaintiff is 'extremely high.' To prove that the City's enactment of Ordinance 05-001 violated their substantive due process rights, the Lessees must demonstrate first that their contracts were the type of property the Due Process Clause

protects and, second, that the City deprived them of their rights under the contracts in a way that 'shocks the conscience' or 'interferes with rights implicit in the concept of ordered liberty.'" *Matsuda*, 512 F.3d at 1156 (internal citations omitted).

In other 2008 cases, *North Pacifica LLC v. City of Pacifica*, 526 Fd..3 478 (9th Cir. 2008), and *Shanks v. Dressel*, 540 F.3d 1082 (9th Cir. 2008), the Ninth Circuit reaffirmed the "rational relationship to a government interest" test. Particularly, in *Shanks*, the Circuit used even stronger language:

> The Supreme Court has "long eschewed ... heightened [means-ends] scrutiny when addressing substantive due process challenges to government regulation" that does not impinge on fundamental rights. Accordingly, the "irreducible minimum" of a substantive due process claim challenging land use action is failure to advance any legitimate governmental purpose. The "exceedingly high burden" required to show that Spokane or its employees behaved in a constitutionally arbitrary fashion has not been met here.
>
> When executive action like a discrete permitting decision is at issue, only "egregious official conduct can be said to be 'arbitrary in the constitutional sense'": it must amount to an "abuse of power" lacking any "reasonable justification in the service of a legitimate governmental objective." Official decisions that rest on an erroneous legal interpretation are not necessarily constitutionally arbitrary. Logan Neighborhood's contrary, and erroneous, assumption that every state law violation invariably gives rise to a substantive due process claim is inconsistent with the principle that substantive due process is not a "font of tort law" that superintends all official decision making.

*Shanks*, 540 F.3d at 1088-89 (internal citations omitted).

In this case, Plaintiffs allege that the City enacted the moratoria with the intent that its moratoria would prevent Plaintiffs from vesting against any changes to the City's Shoreline Master Program due to a neighborhood association's "pressure." Dkt. 111, p. 6. The City states that the City instituted the moratoria as part of its comprehensive SMP review and to protect habitat. Dkt. 100, p. 2. Plaintiffs have made allegations regarding the purpose of the ordinances, but a review of the record does not show evidence that supports Plaintiffs' substantial burden. *See* Dkt. 88, pp. 9, 13-14, 17-18, 44-46; and Dkt. 88-2, pp. 2-4. Revamping the SMP, protecting

against possible SMP changes, and protecting critical habitat are legitimate governmental interests and the use of moratoria to prevent construction that might injure or destroy that habitat, or partially invalidate proposed changes to the SMP, are reasonably related to governmental interests. The fact that the moratoria ordinances were declared invalid by the Washington Supreme Court does not equate to a finding that the City's actions did not advance a legitimate governmental purpose. Plaintiffs must show that the moratoria were not rationally related to any legitimate government interest. They have not done so.

Therefore, based on the record provided, there are no genuine issues of material fact, and the City's motion for summary judgment regarding Plaintiffs' substantive due process claims should be granted.

**J. Fairness**

Part of Plaintiffs' argument is that what happened to Plaintiffs here is just not fair. Fairness, of course, is viewed from different vantage points, and the court's job here is not to determine "fairness" as between the parties, but to determine whether, as a matter of law, the facts support Plaintiffs' claims under § 1983. They do not.

**H. The Takings Claim.**

The Court notes that the parties are not arguing Plaintiffs' Takings claim under the Fifth Amendment on these motions, which may invoke different standards.

## III. ORDER

Therefore, for the foregoing reasons, it is hereby **ORDERED** that:

(1) Plaintiffs' Motion for Partial Summary Judgment (Dkt. 87) is **DENIED**;

(2) Defendant's Motion for Partial Summary Judgment (Dkt. 100) is **GRANTED**; and

(3) Plaintiffs' 42 U.S.C. § 1983 claims are **DISMISSED**.

The Clerk of the Court is instructed to send uncertified copies of this Order to all counsel of record and to any party appearing *pro se* at said party's last known address.

DATED this 27th day of January, 2010.

Robert J. Bryan
United States District Judge